Case 3:24-cv-00075-JHY-JCH    Document 11    Filed 10/29/25    Page 1 of 12
Pageid#: 271

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
October 29, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| Williams Company Southeast, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:24-cv-00075 |
| ) | |
| ) | |
| Solar Eclipse Window Coverings, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

This matter is before the court on Plaintiff Williams Company Southeast's ("Williams Company") motion for default judgment against Defendant Solar Eclipse Window Coverings, LLC ("SEWC") (Dkt. 9). Williams Company seeks damages resulting from SEWC's alleged breach of contract, taxable costs pursuant to 28 U.S.C. § 1920, and post-judgment interest pursuant to 28 U.S.C. § 1961. For the reasons outlined below, the court will grant Williams Company's motion for default judgment.

### I. Background

**A. Factual History**

On August 7, 2023, Williams Company executed a subcontract with SEWC, under which SEWC was to furnish and install window blinds for apartments in a multi-family residential building in exchange for $92,900. (Compl. ¶ 6–7 (Dkt. 1); S-1 Subcontract at 2, 14 (Dkt. 1-3) [hereinafter "Subcontract"].) The apartment building, owned by OC Stonefield

Residential Property Owner ("Owner"), was being constructed at 2105 Bond Street, Charlottesville, Virginia pursuant to an earlier agreement between Owner and Williams Company. (Compl. ¶ 7; *see* Dkt. 1-2 at 119.) Williams Company's subcontract with SEWC called for SEWC to "[p]rovide and install" all window blinds for the project, which required "horizontal window blinds for all exterior windows in all apartment [sic]" as well as one "roller Shade at Flex Room." (Subcontract at 2.) This totaled approximately "227 units worth" of blinds, or "1,600 total blinds," in addition to the singular "motorized roller shade in the fitness area" of the building. (Compl. ¶ 7.)

Several months later, on March 8, 2024, Williams Company issued a "Change Order #001" for SEWC to upgrade the window shades "to a faux wood blind per request of [Owner]" for an additional $98,400. (Compl. ¶ 8; Dkt. 1-4 at 2.) Both Michael Ricotta, an employee of the Williams Company, and a SEWC representative signed the change order for the upgrade reflecting the increased contract total of $191,300. (Dkt. 1-4 at 2.) SEWC also requested an advance payment enabling them to order the upgraded shades. (Compl. ¶ 9.) Williams Company complied by providing SEWC with a $73,041.40 check on April 10, 2024. (*Id.* ¶ 10; Dkt. 1-5 at 2–3.) Tiffany Adams, SEWC's owner and registered agent, (*see* Dkt. 1-1 at 2), cashed the check on April 11, 2024, (Compl. ¶ 10; Dkt. 1-5 at 3).

On May 6, 2024, SEWC first began installing the blinds on site. (Compl. ¶ 11.) They installed "approximately 340 blind segments across the first and second floors of the Project." (*Id.*) A little over a week later, SEWC informed Williams Company that "all of the materials had been released and were in transit to the Project." (*Id.* ¶ 12.) Several days later, on May 20, 2024, Williams Company issued a second advance payment for $73,040.82. (Compl. ¶ 13.)

Again, the check was cashed the next day by Tiffany Adams. (*Id.*; Dkt. 1-6 at 2–3.) Altogether, Williams Company paid SEWC $146,082.22 in advance payments. (Compl. ¶ 28.)

After Tiffany Adams cashed the second check, SEWC stopped responding to emails and calls. (*Id.* ¶ 14.) Williams Company made "numerous attempts to contact SEWC and its employees and owner, Tiffany Adams." (*Id.*) On June 3, 2024, Williams Company contacted SEWC's manufacturer and supplier for the horizontal window blinds, Lotus and Windoware ("Lotus"). (*Id.* ¶ 15.) Lotus stated that SEWC "had only placed a single purchase order in the amount of $21,413 for a total of 464 blinds"—approximately 1,136 blinds short of the total number required for the subcontract project. (*Id.*) This order provided SEWC with the blinds that they had started to install on May 6, 2024. (*Id.*) The same day, Williams Company reached out to SWF Contract, the supplier of the roller shade for the fitness room. (*Id.* ¶ 16.) SWF Contract confirmed that it had not received any prior orders from SEWC, nor did it have "any accounts associated with SEWC." (*Id.*)

Williams Company issued a Notice of Delay letter to SEWC on June 5, 2024, which stated that SEWC had only purchased 464 blinds despite having received the full advance payment for purchase and installation of 1,600 blinds. (*Id.* ¶ 17; Dkt. 1-7 at 2.) The letter also warned SEWC that they would be in breach of contract if the issue was not rectified within 72 hours. (Dkt. 1-7 at 2.) The letter was sent to SEWC's Woodbridge address that was, at the time, their registered office address. (Dkt. 1-7 at 2; Dkt. 1-1 at 2.) SEWC did not respond to the Notice of Delay letter. (Compl. ¶ 18.)

On July 9, 2024, Williams Company sent a "Demand for Payment and Notice of Termination" letter to SEWC via email and certified mail. (*Id.* ¶ 19; Dkt. 1-8 at 2–3.) The

letter was sent by Williams Company's attorney and declared that SEWC's failure to respond constituted a material breach that enabled Williams Company to terminate the subcontract. (Dkt. 1-8 at 2–3.) The letter also demanded that SEWC return the portion of Williams Company's advance payments that were not used to purchase and install blinds within ten days. (*Id.*) After SEWC once again failed to respond, in late July, Williams Company subcontracted with Commonwealth Blinds and Shades to install the 124 blinds that had been delivered to the project but not installed by SEWC. (Compl. ¶ 20.) The new subcontract with Commonwealth cost Williams Company $16,500 in labor and installation costs for the remaining 124 blinds. (*Id.*; Dkt. 1-9 at 2.)

### B. Procedural History

On September 17, 2024, Williams Company filed a complaint in this court seeking to recover the following damages: (1) $124,669.22 in advance payments made to SEWC and not used as required by the subcontract, (2) $16,500 in costs incurred when Williams Company had to hire replacement Commonwealth Blinds to complete the installation of materials that SEWC purchased but did not install, and (3) "other related expenses and costs." (Compl. ¶ 35.) The complaint alleged a single cause of action, breach of contract, stemming from SEWC's failure to use the advance payments to install the remaining window blinds under their subcontract and SEWC's abandonment of its work without communication to Williams Company. (*Id.* ¶ 24–35.)

On December 12, 2024, Williams Company filed a motion for entry of default against SEWC. (Pl.'s Mot. for Entry of Default (Dkt. 6) [hereinafter "Mot. for Default"].) Williams Company delineated the steps it took to serve SEWC; it attempted service of process at five

different addresses associated with SEWC, including SEWC's registered office, at a variety of times and dates spanning a month. (*Id.* ¶ 2; Dkt. 6-1 at 2–3.) After the process server's unsuccessful attempts, Williams Company sought to serve the clerk of the State Corporation Commission of Virginia pursuant to Va. Code Ann. § 13.1-1018(B), which allows the clerk of the Commission to be deemed "an agent of the limited liability company" "whenever [the company's] registered agent cannot with reasonable diligence be found at the registered office." (Mot. for Default ¶ 3). Williams Company served the clerk on October 30, 2024, in accordance with Va. Code Ann. § 12.1-19.1. (Mot for Default ¶ 4; Dkt. 6-2 at 2.) The Certificate of Compliance was filed by this court on November 20, 2024. (Dkt. 5.)

On December 13, 2024, Magistrate Judge Joel C. Hoppe granted Williams Company's motion for entry of default, stating that SEWC "has failed to plead or otherwise defend in the time allowed under Rule 12" and directing the clerk to enter default against SEWC as permitted under Federal Rule of Civil Procedure 55(a). (Dkt. 7.) The clerk entered default less than a week later. (Dkt. 8.)

On March 27, 2025, Williams Company filed a motion for default judgment pursuant to Rule 55(b)(1). (Mot. for Default Judgment (Dkt. 9).) Williams Company requested that the clerk enter judgment for a total of $141,999.22.[1] The motion contends that both $141,169.22 in damages for breach of contract and $830 in taxable costs under 28 U.S.C. § 1920 qualify as "a sum certain or a sum that can be made certain by computation." (Mot. for Default Judgment ¶ 9) (quoting Fed. R. Civ. P. 55(b)(1).) The filing also included an affidavit from the

---

[1] Although Williams Company's motion for default judgment asks the clerk to enter default judgment under Rule 55(b)(1), the court has "discretion to review such motions and direct entry of judgment if appropriate." *Lotte Ins. Co. v. R.E. Smith Enters., Inc.*, No. 4:23CV153, 2024 WL 5708200, at *1 n.1 (E.D. Va. May 10, 2024).

- 5 -

Vice President of Operations at Williams Company, Matt Olberding, showing the amount due, and noted that the defendant was neither a minor nor an incompetent person. (*Id.* ¶ 5, 6; Dkt. 9-1.) Since this motion was filed, SEWC has not appeared in this action or filed any response to any of Williams Company's previous filings.

## II.     Standard of Review

Rule 55 of the Federal Rules of Civil Procedure governs the entry of defaults and default judgments after a defendant has been properly served. Rule 55 provides that when a defendant's failure "to plead or otherwise defend . . . is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered, if the plaintiff is seeking "a sum certain or a sum that can be made certain by computation," the plaintiff can request that the clerk enter judgment and provide an affidavit showing the amount due. Fed. R. Civ. P. 55(b)(1). So long as the defendant "has been defaulted for not appearing" and "is neither a minor nor an incompetent person," the clerk "must enter judgment" in favor of the plaintiff for the sum certain supported by the affidavit. *Id.*

If the amount requested by the plaintiff is not a "sum certain," the entry of a default judgment rests with the sound discretion of the court. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982); *Hummel v. Hall*, 868 F. Supp. 2d 543, 548 (W.D. Va. 2012); *see* Fed. R. Civ. P. 55(b)(2). A court may hold a hearing to determine damages or any other issues necessary for its judgment, but it is not required to do so. *See* Fed. R. Civ. P. 55(b)(2); *Timilon Corp. v. Empowerment Just. Ctr. Corp.*, 738 F. Supp. 3d 669, 679 (D. Md. 2024).

In evaluating a motion for default judgment, the court must decide whether the complaint's well-pleaded allegations "support the relief sought." *DIRECTV, Inc. v. Pernites*,

200 F. App'x 257, 258 (4th Cir. 2006) (citation omitted). "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . ." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (internal quotation marks omitted). However, the defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV*, 200 F. App'x at 258 (citation omitted). Nor is the defendant held to admit the sum of damages alleged in the complaint. *See Fleisher v. How2Connnect.com*, No. 3:14-CV-00045, 2015 WL 1925426, at *3 (W.D. Va. Apr. 28, 2015) ("While Plaintiff's factual averments must be taken as true, his assessment of the damages need not be."); Fed. R. Civ. P. 8(b)(6).

When reviewing motions for default judgment, this court considers several factors, including:

> (1) whether there is a large amount of money involved in the litigation; (2) whether there are material issues of fact in the case needing resolution; (3) whether the case involves issues of great public importance; (4) whether the grounds for the motion for a default judgment are highly technical; (5) whether the party asking for a default judgment has been prejudiced by the non-moving party's actions or omissions; (6) whether the actions or omissions giving rise to the motion for a default judgment are the result of a good-faith mistake on the part of the non-moving party; (7) whether the actions or omissions giving rise to the motion for a default judgment are the result of excusable neglect on the part of the non-moving party; and (8) whether the grounds offered for the entry of a default judgment are clearly established.

*Loeschen v. Shrom*, No. 7:18-cv-00429, 2020 WL 4228311 at *2-3 (W.D. Va. July 23, 2020) (quoting *Tweedy v. RCAM Title Loans, LLC*, 611 F. Supp. 2d 603, 611 (W.D. Va. 2009)); *see also* 10A Wright & Miller's Federal Practice and Procedure § 2685 (4th ed. 2024).

### III.   Analysis

The court finds that Williams Company is entitled to default judgment on its breach of contract claim. Based on the uncontested record, the subcontract between Williams Company

and SEWC and the subsequent payments made to SEWC pursuant to the change order support a default judgment award in this case.

### A. SEWC's Liability Under Williams Company's Breach of Contract Claim

To state a claim for breach of contract under Virginia law,[2] the plaintiff must allege "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 299 (Va. 2016) (quoting *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 48 (Va. 2006)). Taking the well-pleaded facts in the complaint as true, Williams Company has sufficiently alleged SEWC's breach of its legally enforceable obligation under the subcontract.

First, SEWC had a legally enforceable obligation under the terms of the subcontract, (Dkt. 1-3), to complete the installation of window blinds in the Bond Street apartment complex. When SEWC abandoned its work after installing only 340 blinds,[3] a small fraction of the total 1,600 blinds called for under the subcontract, SEWC breached that obligation. Further, Williams Company suffered clear damage due to SEWC's abandonment of the project. Williams Company was forced to hire a different company to install the 124 remaining

---

[2] When analyzing a breach of contract claim, a federal court sitting in diversity must apply the substantive law of the forum state, Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938), which includes the state's choice-of-law rules, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Here, the court must apply the choice-of-law rules of Virginia, the forum state. Since the subcontract between SEWC and Williams Company does not specify which state's law governs the contract, the default rule applies, and Virginia law governs the contract. Va. Code Ann. § 59.1-501.9 ("In the absence of an enforceable agreement on choice of law, the contract is governed by the law of Virginia.").

[3] The court notes a discrepancy between the notice of delay letter, (Dkt. 1-7), and Williams Company's complaint, (Compl. ¶ 11). In the complaint, Williams Company alleges that while SEWC ordered 464 blinds from Lotus, they only installed approximately 340 blinds. (Compl. ¶ 11, 15.) Their notice of delay letter, on the other hand, states that SEWC has "installed only 464 blinds out of 1600 total." (Dkt. 1-7 at 2.) The court proceeds under the assumption that the complaint states the correct number of installed blinds, as Williams Company's later subcontract with Commonwealth Blinds for the installation of 124 blinds corroborates the complaint's allegation that only 340 of the 464 purchased were installed. (*See* Dkt. 1-9 at 2.)

blinds left by SEWC on the worksite, which cost Williams Company $16,500 under a new subcontract, (Dkt. 1-9 at 2)—a cost that it would not have otherwise incurred had SEWC completed the project as called for by the subcontract. Williams Company was also deprived of the portion of its advance payments that SEWC did not use to purchase and install the remainder of the blinds.

### B. Calculation of Damages Arising from SEWC's Breach of Contract

The court must independently assess whether the complaint's well-pleaded allegations support the total damages sought. *See DIRECTV*, 200 F. App'x at 258. Under Virginia contract law, a plaintiff must prove damages with reasonable certainty, *Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009), but damages "need not be established with mathematical certainty," *Estate of Taylor v. Flair Property Assocs.*, 448 S.E.2d 413, 416 (1994). When a party seeks direct damages, Virginia courts award damages "which arise naturally or ordinarily from a breach of contract." *William H. Gordon Assocs., Inc. v. Heritage Fellowship, United Church of Christ*, 784 S.E.2d 265, 279 (Va. 2016) (internal quotation marks omitted); *see Virginia Model Jury Instructions – Civil* No. 45.500 (2025). "[T]he proper measure of unliquidated damages for breach of a contract is the sum that would put [the plaintiff] in the same position, as far as money can do it, as if the contract had been performed." *Nichols Const. Corp. v. Virginia Mach. Tool Co., LLC*, 661 S.E.2d 467, 471 (Va. 2008) (alteration in original) (internal quotation marks omitted).

Williams Company's claim for damages following SEWC's partial performance is not as easily ascertainable as a claim based on a contractual provision for liquidated damages. However, a court may nevertheless award compensatory damages through default judgment

"if the record adequately reflects the basis for award via 'a hearing or a *demonstration by detailed affidavits establishing the necessary facts.*'" *E.E.O.C. v. N. Am. Land Corp.*, No. 1:08CV501, 2010 WL 2723727, at *2 (W.D.N.C. July 8, 2010) (quoting *Adolph Coors Co. v. Movement Against Racism & The Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)) (emphasis added). Here, Williams Company's documentary evidence and affidavit provide detailed support for its allegations that Williams Company paid SEWC $146,082.22 in advance payments, and SEWC only spent $21,413 on the window blind materials. (*See* Dkt. 1.5 at 2, 1-6 at 2, 9-1 ¶ 10–11.) Similarly, Williams Company's evidence adequately supports their claim for $16,500 in securing a replacement subcontractor. (*See* Dkt. 1-9 at 2, 9-1 ¶ 12.) The court finds that the total $141,169.22 contractual damages requested is appropriate.

Williams Company also seeks $830 in filing and service of process costs. This amount is also reasonable and supported by detailed evidence. (*See* Dkt. 9-1 at 34, 36, 38 (documenting the $405 fee to file the complaint, the $395 fee to serve four of SEWC's addresses, and the $30 fee for service of process on the Virginia Clerk of the Commission)); *see also Trs. of Nat'l Elec. Benefit Fund v. Loga Holding, LLC*, No. PWG-21-2917, 2022 WL 3100759, at *4 (D. Md. Aug. 4, 2022) (awarding costs associated with filing fees and service of process fees in a default judgment).

### C. Factors Supporting Default Judgment

When applying the factors considered by this court in *Hummel*, 868 F. Supp. 2d at 548, the analysis weighs in favor of granting the motion for default judgment.

For one, "grounds offered for the entry of a default judgment are clearly established" by Williams Company's detailed complaint and attached exhibits. *Id.* There is no question

that SEWC breached its contract with Williams Company by abruptly abandoning its installation obligations and all communication with the plaintiff. Given Williams Company's comprehensive documentation of the agreements between the parties and its later attempts to reach out to SEWC, there are no "material issues of fact" the court must analyze to determine whether a breach occurred. *Id.* Additionally, this standard breach of contract claim against a singular subcontractor does not implicate "issues of great public importance." *Id.*

SEWC's complete unresponsiveness in this case further justifies a default judgment award for Williams Company. The courts have granted default judgment where the defendant "has completely failed to participate in th[e] litigation in any meaningful way." *Tweedy*, 611 F. Supp. 2d at 606; *see also Riddick v. Kiser*, No. 7:20-cv-00081, 2021 WL 2099573, at *2 (W.D. Va. May 25, 2021). Courts have repeatedly found that default judgment is appropriate where the "[d]efendant is unresponsive for more than a year," as is the case here. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005). Over the past year, Williams Company has made numerous attempts to contact and serve SEWC "through its registered agent at various addresses . . . , including at the registered office," but was unable to effectuate service. (Mot. for Entry of Default ¶ 2.) Over a year has passed since the first attempts to serve SEWC. (See Dkt. 6-1 at 2.) It has been over 10 months since the clerk mailed SEWC notice of the entry of default on December 17, 2024. (Dkt. 8.) Throughout this time, SEWC has neither appeared in the case nor responded in any way to Williams Company's repeated outreach. Such significant passage of time undercuts the possibility that SEWC's unresponsiveness is a "good-faith mistake" or "the result of excusable neglect." *Hummel*, 868 F. Supp. 2d at 548.

Finally, SEWC's lack of response or appearance in this case has clearly prejudiced Williams Company by depriving the company of both advance payments in exchange for only partial performance, and by forcing the company to pay extra costs to hire a replacement subcontractor that could complete the window blind installation on a date later than originally expected. *See id.* Williams Company had relied on SEWC as a subcontractor for the larger Bond Street contract with the Owner, which was on a tight project schedule. (*See* Dkt. 1-2 at 49 ("[Williams Company] shall perform, and cause to be performed, the Work in compliance with the Project Schedule. Time is of the essence . . . .") Overall, the *Hummel* factors clearly support a grant of default judgment to Williams Company in this case.

## IV. Conclusion

For the reasons stated above, Williams Company's motion for default judgment (Dkt. 9) will be **GRANTED**. Judgment will be entered in favor of Williams Company and against Solar Eclipse Window Coverings in the amount of $141,999.22—representing $141,169.22 in contractual damages and $830 in taxable costs—plus post-judgment interest that will accrue pursuant to 28 U.S.C. § 1961.

An appropriate Order will issue.

ENTERED this __29th__ day of October, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE